IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RITA FOX, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY<br><br>Defendant. | Civil Action No.:<br><br>**CLASS-ACTION COMPLAINT** |

Plaintiff, Rita Fox individually and on behalf of all others similarly situated, files this Class Action Complaint against Allstate Insurance Company ("Allstate or Defendant"), and in support thereof states the following:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff, Rita Fox who was a named insured under a Allstate automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV." ACV is the cash amount to replace the vehicle, including mandatory sales taxes.

2. Defendant Allstate issues automobile policies in the State of New York. One of the coverages Allstate offers is comprehensive and collision coverage.

3. Upon information and belief, Allstate systematically underpaid not just Plaintiff but thousands of other putative Class Members, as defined herein. Defendant owes its insureds for ACV losses for total-loss vehicles insured with comprehensive and collision coverage.

4. This lawsuit is brought by Plaintiff on behalf of herself and all other similarly

situated insureds of Defendant's automobile policies issued in the State of New York that have suffered damages due to Defendant's practice of refusing to pay full mandatory sales tax to first-party total-loss insureds on physical-damage policies containing comprehensive and collision coverages. Such payments are required by applicable New York law and Defendant's insurance policies issued to Plaintiff and members of the Class, defined herein.

5. The failure to pay full sales tax for first-party total losses owed to the insureds pursuant to the policy language is a breach of the policy and violates New York law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative class defined herein, each of which consists of at least 100 members, and he and the Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the §1332 exceptions apply to this claim.

7. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

8. At all times material hereto, Plaintiff Rita Fox was domiciled in Dutchess County, New York, and was a citizen of the State of New York.

9. Defendant, Allstate Insurance Company ("Allstate") is an Illinois insurance company licensed to and conducting business in Illinois which has its principal place of business and headquarters located at 2775 Sanders Road Northbrook, IL 60062

10. Plaintiff leased the vehicle and insured it through Defendant Allstate. Plaintiff made a first-party total vehicle loss claim under her Allstate policy with a loss date of October 6,

2016. Allstate procured a valuation report for Plaintiff's vehicle and prepared and sent her a document titled "Market Valuation Report" purportedly approving the claim and itemizing what was owed to Plaintiff for her total vehicle loss claim under her Allstate policy. The Settlement Statement itemized the valuation of the lost vehicle and showed nothing owed to Plaintiff for sales tax.

## AMOUNT-IN-CONTROVERSY

11. Allstate wrote hundreds of millions of dollars in auto-insurance premiums for the year 2016.

12. Allstate's automobile insurance policies required the payment of ACV for first-party total vehicle loss claims. New York insurance regulations define ACV and require that an insurer pay all amounts, which necessarily includes sales taxes, for which the claimant can reasonably be expected to pay to replace the total loss vehicle with an item substantially identical to the damaged vehicle. N.Y. Comp. Codes R. & Regs, tit. 11 § 216.6(b)(2) (1982) ("Regulation 64").

13. The payment of sales tax is required in New York in connection with the purchase or lease of any vehicle, and therefore part of the replacement cost of any vehicle. The cumulative motor vehicle sales tax in Dutchess County, New York, at the time of Plaintiff's total loss accident was 8.125

14. Plaintiff's claim, as further set out herein, alleges that Defendant's insurance-policy contract obliges it to pay full replacement costs to its insureds (including Plaintiff) in the event of a total loss. Moreover, New York regulations require the inclusion of sales tax in any claim settlement for total-loss vehicles. Defendant nevertheless declines to include such taxes when settling claims for total-loss vehicles, thereby breaching its contract with every putative class member and violating New York law.

15. For each approved total vehicle loss claim, Defendant provides its insureds (including Plaintiff) with a settlement statement or materially similar document. By these settlement statements, Defendant purportedly shows its insureds the amounts owed to them for their total vehicle loss claims under their policies. Defendant's settlement statements, however, falsely stated insureds were owed nothing for taxes required to be paid to them for certain ACV total-loss claims including leased vehicles. Accordingly, Defendant's settlement statements misled its insureds as to what was owed to them by New York law and under their policies.

16. Although the precise number of class members is unknown and can only be determined through appropriate discovery, Plaintiff believes that, because Defendant is among the largest motor vehicle insurers in the State of New York, the class of persons of the Class defined herein who are affected by Defendant's unlawful practices consists of thousands of individuals and that the amount in controversy of the Class will well exceed $5,000,000, exclusive of interest and costs. Plaintiff is a member of the Class defined herein.

### FACTUAL ALLEGATIONS

17. Defendant utilizes a standard form policy (the "Policy") within the State of New York. The standardized Policy language related to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by Allstate in New York. The Policy language is standardized in all relevant and material ways.

18. Under the Policy, Allstate is authorized to elect to pay ACV in the event of a total loss. This election allows Defendant to avoid paying for loss when the cost to repair or replace exceeds the value of the vehicle. In New York, if Defendant elects to pay ACV, Defendant is required to include the cost of mandatory sales tax.

19. At all times material hereto, Plaintiff insured a 2015 Hyundai Sonata SE, VIN # 5NPE24AF3FH215944 ("Insured Vehicle").

20. At all times material hereto, Plaintiff insured the Insured Vehicle under an insurance policy issued by Defendant Allstate.

21. On or about October 6, 2016, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 000431328756d01, and the Insured Vehicle was determined to be a total loss.

22. Allstate's uniform procedure is to use a third-party vendor to determine the base and adjusted vehicle value (what it calls Base Vehicle Value) of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss.

23. Plaintiff's total loss vehicle is identified in the policy declarations, and it was legally titled and registered in compliance with New York laws at the time of loss.

24. ACV generally and for policies issued in New York specifically combines the market value of the vehicle plus sales taxes required to replace the total loss vehicle with an item substantially identical to the damaged vehicle. Plaintiff challenges Allstate's failure to include sales tax with ACV payments.

25. Following the filing of the claim, Defendant determined and provided Plaintiff with a document entitled "Market Valuation Report" stating that the Insured Vehicle was a total loss with a base value of $14,855.00 and which added to the base value a "DMV Fee + $ 12.75" such that Value before Deductible was determined to be $ 14,867.75 the total owed to Plaintiff for her claim, and that "$0.00" were owed to her on her claim for sales tax. (Ex. A).

26. Defendant's calculation of amounts owed for the total loss did not include sales tax mandated by New York laws.

27. After Defendant's payment to the leasing company, Plaintiff still owed money under the lease, which debt would have been satisfied or diminished had Defendant included the sales tax in the ACV payment.

28. Plaintiff replaced her total loss vehicle and incurred sales tax in doing so.

29. Sales tax is a mandatory cost that must be paid to replace any vehicle in the State of New York.

30. Mandatory sales tax to lease a vehicle is due at the inception of the lease on the total amount of the lease payments for the entire term of the lease. N.Y. Tax Law § 1111(i).

31. The sales tax in Poughkeepsie, Dutchess County New York Zip for a replacement vehicle effective June 1, 2005 is 8.125%, distributed as follows: County - 3.75%, State - 4.0%, MTA - 0.375% (imposed for the benefit of the Metropolitan Commuter Transportation District). 8% (State tax rate of 4%, and County tax rate of 4%).

32. New York insurance regulations require that an insurer with policy provisions requiring the payment of ACV pay all amounts for which the claimant can reasonably be expected to pay to replace the total loss vehicle with an item substantially identical to the damaged vehicle. N.Y. Comp. Codes R. & Regs, tit. 11 § 216.6(b)(2) (1982) ("Regulation 64"). A violation of Regulation 64 is also a violation of N.Y. Ins. §2601 (the Unfair Claim Settlement Practices Statute). Replacement Costs include sales taxes that an insured must pay to replace a total loss vehicle.

33. By purporting to pay ACV after a total loss, Defendant, through its Policy, promised to pay sales tax as part of its Collision and Comprehensive coverages.

34. Defendant, however, by its conduct alleged herein, breached the Policy contract with Plaintiff and the other Class members by failing to pay sales tax upon the total loss of an insured vehicle.

35. Defendant also communicates to insureds in their standard claims process communications that sales tax is not included in the ACV of a total loss vehicle which statements are in direct contravention of N.Y. Comp. Codes R. & Regs., tit. 11, § 216.6(b)(2) (1982)

(Regulation 64). In particular, Defendant provides its insureds making total vehicle loss claims with settlement statements that falsely state insureds were owed "$0.00" or nothing for sales tax required to be paid to them for all ACV total loss claims under Regulation 64 and hence by their Policy as well. This standard unfair claims practice, which is a pattern of conduct perpetuated by Allstate, is deceptive and misleading.

## THE ALLSTATE INSURANCE POLICY

36. The relevant insurance policy language is materially identical as to both Plaintiff and all putative class members. Defendant utilizes the same or materially the same applicable Policy forms and language for all class members.

37. The insurance Policy states that "Collision" coverage means they will pay for the sudden, direct and accidental loss to a covered auto, including an attached trailer; or non-owned auto; and its custom parts or equipment, resulting from collision.

38. Under a provision entitled "Limits of Liability," the Policy states that the "limit of liability for loss to a covered auto . . . is the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible."

39. Upon information and belief, Allstate invokes the limitation of liability of ACV any time Defendant determines that a vehicle has sustained a total loss, because the cost to repair or replace the vehicle exceeds the value of the vehicle. Electing ACV allows Allstate to avoid paying the higher amount to repair or replace the damaged or stolen vehicle. When Allstate elects to invoke the limitation of liability of ACV, it is thereafter obligated to pay ACV.

40. There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and a comprehensive total-loss claim.

41. ACV is not specifically defined in the policy. The policy states that "[d]efined terms are printed in bold-face type." All references to ACV in the policy, however, are not in bold-

face type. The policy has GENERAL DEFINITIONS listed which apply throughout the policy. ACV is not defined in the General Definitions. The policy providing coverage for DAMAGE TO A VEHICLE has a section entitled Additional Definitions. ACV is not defined in Additional Definitions in the Damage to a Vehicle coverage section of the Policy.

42.     Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding taxes from ACV; (2) any provision deferring payment of the ACV state taxes for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV state taxes; or (5) any provision linking the amount of ACV state taxes to a particular replacement vehicle and the corresponding state taxes on said replacement vehicle.

43.     Because the Policy lacks a specific definition of ACV and uses ACV to state the coverage an insured has for a total vehicle loss, the definition or meaning of ACV provided by Regulation 64 becomes a term of the Allstate Policy requiring payment of all Replacement Costs, including mandatory sales tax.

44.     The Policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" for purposes of the Policy.

## CLASS ALLEGATIONS

45.     Plaintiff brings this action respectively seeking representation of the Class, defined below, pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), as may be deemed appropriate by the Court.

46.     Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any automobile insurance policy issued in the State of New York by Allstate INSURANCE COMPANY, with the same or materially the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the six-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and were not paid ACV sales tax for their claim on the loss of said vehicle.

47. Although the precise number of class members for the Class is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of New York and writes millions of dollars of private-passenger physical-damage coverage premiums, the persons affected by Defendant's unlawful practice consists of thousands of individuals, or the persons affected for the Class are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language and materially the same written claim settlement communications, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members of the Class. Thus, numerosity of the Class is established.

48. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for Plaintiff and the Class is satisfied for reasons articulated herein.

49. Plaintiff's claims are typical to those of all members of the Class because members of the Class are similarly affected by Defendant's uniform failure to make pay the full ACV upon the total loss of insured vehicles, and misleading uniform written claim settlement communications. The material and relevant policy terms for each member of the Class are substantially identical to the terms of Plaintiff's policies, as are the written claim settlement communications, such as the settlement statements, sent by Defendant to Plaintiff and class

members. Further, Plaintiff's and members of the Class's legal claims arise from the same core practices, namely, the failure to make full ACV payments, including sales tax, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the members of the Class. Plaintiff suffered the same harm as all the other members of the Class he seeks to represent. Moreover, the applicable law is New York, and it is uniformly applicable to Plaintiff and members of the Class.

50.     Plaintiff's interests are coincident with and not antagonistic to those of other class members of the Class, nor is the Plaintiff subject to any unique defenses.

51.     Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class.

52.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel have successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax after total losses.

53.     Plaintiff's claims raise questions of law and fact common to all members of the Class, within the meaning of Fed. R. Civ. P. 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all class members are bound by the same materially identical policy terms and Defendant sent them materially the same written settlement communications. Said predominant common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and Class Members, whose total vehicle loss claims were approved by Defendant, are owed an amount including approximately 8% of the vehicle value in sales tax upon the total loss of an insured vehicle; (b) whether Defendant is required under New York law to pay mandatory taxes to insureds

who suffer total-losses to vehicles insured under Defendant's Policies; (c) whether Defendant breached its insurance contracts with the Plaintiff and the class members by failing to pay such Replacement Costs upon the total loss of an insured vehicle; (d) whether Defendant sent materially identical and misleading written claim settlement communications to Plaintiff and Class Members falsely indicating that they were not to receive taxes on their total vehicle loss claims, and (e) whether Defendant's total vehicle loss claim settlement payment did not include ACV sales tax for the loss of said vehicle.

54. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

55. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the Class such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

56. Certification of the above Class is also supported by the following considerations:

   a. The relatively small amount of damages that members of the Class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

   b. Counsel in this class action is not aware of any previously filed litigation against the Defendant in which any of the members of the Class are a party and which any question of law or fact in the subject action can be adjudicated; and

   c. No difficulties would be encountered in the management of Plaintiff's claim on

11

a class action basis, because the Class are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

57. Defendant's breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Moreover, Defendant is continuing to pay new first-party total loss vehicle claims under the same Policy provisions without paying full ACV taxes, and is continuing to send its insureds settlement communications falsely indicating that no taxes are owed for their first-party total loss vehicle claims. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.

58. In the alternative, the action may be maintained as a class action with respect to particular issues, pursuant to Fed. R. Civ. P. 23(c)(4).

59. All conditions precedent to suit have occurred or been performed.

## COUNT I: BREACH OF CONTRACT

60. The allegations contained herein are incorporated by reference.

61. This count is brought by Plaintiff individually and on behalf of the Class Members against Defendant Allstate.

62. Plaintiff was a party to an insurance contract with Defendant Allstate as described herein. All Class Members were parties to an insurance contract with Defendant Allstate containing materially identical terms.

63. The interpretation of Plaintiff's and all Class Members' insurance Policies is governed by New York law.

64. Plaintiff and all Class Members made a claim determined by Defendant Allstate to be a first-party total loss vehicle under the insurance policy and determined to be a covered claim.

65. Defendant Allstate, by paying the total loss vehicle claim, determined that Plaintiff

and each Class Member complied with the terms of their insurance policy contracts, and fulfilled all duties and conditions under the Policy to be paid on his or her total loss of vehicle.

66. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class Member were owed the actual cash value of the vehicle, including mandatory sales tax.

67. Defendant Allstate refused to pay sales tax to Plaintiff and every Class Member.

68. Defendant Allstate's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member. Defendant Allstate is one of the largest physical damage auto insurers in New York. Allstate utilizes the same or materially the same form Policy for all insureds within the state, which promises to pay ACV in the event of a total loss. The payment of sales tax with ACV is required pursuant to New York insurance regulations as detailed herein, and which govern the interpretation of Defendant Allstate's Policy. By failing to pay sales tax, Defendant Allstate not only breaches its Policy contracts, but also perpetuates conduct that violates community standards for decency, fairness, and breaches its duty of good faith and fair-dealing.

69. As a result of said breaches, Plaintiff and the Class Members are entitled under Defendant's insurance Policies to sums representing the benefits owed for ACV mandatory taxes, as well as costs, pre-judgment and post-judgment interest, declaratory relief, injunctive relief, and other relief as is appropriate.

### COUNT II: DECEPTIVE ACTS AND PRACTICES, NEW YORK GENERAL BUSINESS LAW. § 349

70. The allegations contained herein are incorporated by reference.

71. This Count is brought by Plaintiff on behalf of herself and all Class Members against Allstate.

72. Defendant promises to pay ACV in the event of a total loss of an insured vehicle. ACV is not specifically defined under Allstate's standard policies.

73. Under New York insurance regulations, when ACV is not specifically defined in a policy, it shall mean: "the lesser of the amounts for which the claimant can reasonably be expected to:

> a. repair the property to its condition immediately prior to the loss; or
> b. replace it with an item substantially identical to the item damaged. **Such amount shall include all monies paid or payable as sales taxes on the item repaired or replaced.** This shall not be construed to prevent an insurer from issuing a policy insuring against physical damage to property, where the amount of damages to be paid in the event of a total loss to the property is a specified dollar amount.

11 NYCRR § 216.6 (emphasis added).

74. According to these requirements, Defendant was required to pay all sales taxes on the total-loss vehicles. Nevertheless, Defendant falsely and misleadingly communicates to insureds in its standard a settlement claims communications that sales tax is not part of what they are entitled to receive for their total-loss vehicle claim on their Allstate Policy.

75. Section 349(a) of the N.Y. General Business Law proscribes the use, act, or employment of deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in New York State.

76. Defendant's business practices are governed by Section 2601 of the New York Insurance Law, which lists the following practices that, by definition, are deceptive acts and practices:

> (1) knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;
> (2) failing to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;
> (3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

14

> (4) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear, except where there is a reasonable basis supported by specific information available for review by the department that the claimant has caused the loss to occur by arson. After receiving a properly executed proof of loss, the insurer shall advise the claimant of acceptance or denial of the claim within thirty working days;
> (5) compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;
> (6) failing to promptly disclose coverage pursuant to subsection (d) or subparagraph (A) of paragraph two of subsection (f) of section three thousand four hundred twenty of this chapter;
> (7) submitting reasonably rendered claims to the independent dispute resolution process established under article six of the financial services law; or
> (8) artificially deflating or otherwise lowering cost data used for adjusted claims, or using cost data that is not appropriate for the region of the state where the loss occurred; this shall include but is not limited to claims adjusted by a person issued a temporary permit pursuant to subsection (n) of section two thousand one hundred eight of this chapter.

Accordingly, Defendant is clearly on notice that it may not communicate with insureds in a way that is misleading or false in any material respect.

77. Defendant engages in deceptive acts and practices in violation of New York Gen. Bus. Law. § 349 by knowingly misrepresenting and misleading Plaintiff and Class Members as to pertinent facts related to their Policy coverage for their total loss vehicle claims.

78. Specifically, Defendant falsely misleads, and otherwise conceals, from insureds that they are entitled to sales tax in the event of a total loss.

79. In the event of a total loss, Defendant provides its insureds with materially identical written settlement communications that sets forth what purports to be the ACV of the total loss vehicle to which they are purportedly entitled to receive for their claim. These communications are directed toward and broadly impact consumer-insureds in New York, and fail to include any provision for taxes, and instead falsely and misleadingly indicate that no taxes are owed or payable for the total-loss vehicle claim.

80. Insureds are generally not familiar with New York insurance law and would not otherwise know that they are entitled, by law, to sales tax with ACV payments. Defendant's practice of withholding pertinent information about required insurance coverage is part of a pattern of conduct with respect to Defendant's settlement practices throughout New York and constitutes a deceptive and unfair act that is directed toward consumers in the State of New York.

81. The foregoing deceptive act and practice is misleading in a material way because it fundamentally misrepresents the amounts to which Plaintiff and Class Members are entitled to receive for their total-loss vehicle claim.

82. Defendant's deceptive practices have caused Plaintiff and all Class Members injury by misleading them and thereby enabling the undervaluing the ACV owed to insureds from the total loss of their insured vehicles, resulting in an underpayment to insureds.

83. Defendant has violated N.Y. Gen. Bus. Law § 349 by acting deceptively toward Plaintiff and all Class Members. Defendant's deceptive acts and practices violating N.Y. Gen. Bus. Law § 349 have been knowing and/or willful.

84. As a result of these deceptive practices, Plaintiff and Class Members are entitled to actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees, as well as costs, pre-judgment and post-judgment interest, declaratory relief, injunctive relief and other relief as is appropriate.

## COUNT III: UNJUST ENRICHMENT

85. The allegations contained herein are incorporated by reference.

86. This Count is brought by Plaintiff on behalf of herself and all Class Members against Allstate Insurance Company in the alternative.

87. Defendant provides insurance coverage to Plaintiff and all Class Members.

88. Defendant engaged in unlawful, deceptive and unfair practices as described herein

resulting in - undervaluing the ACV for total loss vehicle claims and failing to pay Plaintiff and Class Members all mandatory taxes to which they were entitled.

89. Defendant's unlawful and deceptive practices are directed toward all insureds covered under Allstate Policies within the State of New York. Accordingly, Defendant's unlawful and deceptive practices are directed toward the general public.

90. It is contrary to equity and good conscience to allow Defendant to profit from their unlawful and deceptive conduct and misleading representations.

91. As a result of their unjust enrichment, Plaintiff and Class Members are entitled to treble damages, as well as costs, pre-judgment and post-judgment interest, declaratory relief, injunctive relief and other relief as is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class request an award, relief and entry of a judgment, as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action; that Plaintiff be appointed representative of the Class; and that Plaintiff's counsel be appointed counsel of the Class.

B. Compensatory damages for each Cause of Action for which they are available.

C. Statutory damages allowable under New York Gen. Bus. Law § 349.

D. Punitive damages for each Cause of Action for which they are available.

E. Restitution in an amount determined at trial for each Cause of Action asserted herein for which this relief is available.

F. An Order declaring Defendant's conduct to be unlawful, deceptive and in violation of the parties' Policy contracts and applicable New York law, and enjoining Defendant from continuing the unlawful, deceptive practices described throughout

      this Complaint.

G.     An Order awarding Plaintiff his costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest for each Cause of Action for which they are available.

H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendant received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

I.     Such other and further relief as may be available as part of the statutory claims asserted herein, or otherwise as may be deemed necessary or appropriate for any of the claims asserted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

Dated: February 25, 2022        By:   **SHUB LAW FIRM LLC**

                                                            */s/ Jonathan Shub*
                                                            Jonathan Shub (PA Bar ID 53965)
                                                            Kevin Laukaitis (PA Bar ID 321670)
                                                            134 Kings Highway E., 2nd Floor
                                                            Haddonfield, NJ 08033
                                                            T: 215-238-1700
                                                           jshub@shublawyers.com
                                                            klaukaitis@shublawyers.com

                                                           Amy L. Judkins*
                                                           Edmund A. Normand*
                                                          **NORMAND PLLC**
                                                           3165 McCrory Place, Suite 175
                                                          Orlando, FL 32803
                                                          Telephone: (407) 603-6031
                                                          Facsimile: (888) 974-2175
                                                          Email: ed@ednormand.com
                                                          Email: amy.judkins@normandpllc.com

Email: ean@normandpllc.com

*Pro Hac* to be filed

**Counsel for Plaintiff and the Proposed Class**